# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-0051-001-CVE |
| ) | (11-CV-572-CVE-TLW) |
| MANUEL BONILLA, ) | |
| a/k/a "Carlos Contreras," ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On September 12, 2011, defendant Manuel Bonilla, also known as Carlos Contreras, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. ## 655, 656). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

### I.

On March 6, 2008, a grand jury returned a sealed indictment charging defendant and others with drug and firearm offenses. Dkt. # 2. Many of Bonilla's co-defendants were arrested and made their initial appearances, but Bonilla was a fugitive and could not be found. As the case progressed, the government returned to the grand jury seeking superseding indictments to add charges or defendants, and the grand jury returned a superseding and second superseding indictment. Dkt. ## 169, 222. Defendant was eventually arrested and he made his initial appearance on November 6, 2009. Dkt. # 534. Defendant was found to be indigent and the Court appointed William Widdell

to represent him. Id. The Court entered a scheduling order setting defendant's jury trial for December 21, 2009. The government filed a motion to declare this case a complex matter under the Speedy Trial Act, 18 U.SC. § 3161 et seq., and defendant did not oppose the motion. Dkt. # 539. The Court granted the government's motion and continued the jury trial to April 19, 2010. Dkt. # 540. On February 2, 2010, the grand jury returned a third superseding indictment charging defendant with conspiracy to violate the federal drug laws in violation of 21 U.S.C. § 846 (count one), continuing criminal enterprise in violation 21 U.S.C. § 848 (count two), conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (counts three, six, seven, and eight), possession of a firearm after former felony conviction in violation of 18 U.S.C. § 922(g)(1) (count four), possession of a firearm in furtherance of a drug trafficking crime in violation 18 U.S.C. § 924(c) (count five), and five counts of unlawfully using a communication facility in violation of 21 U.S.C. § 843(b) (counts nine through thirteen). Dkt. # 549.

Defendant pleaded guilty to counts two and three of the third superseding indictment, and to a money laundering charge alleged by information (Dkt. # 559), pursuant to a plea agreement with the government. The plea agreement contained an appellate and post-conviction waiver, wherein defendant agreed, inter alia, to knowingly and voluntarily waive the right to "collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Dkt. # 566, at 3. He "expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his [rights]; and that defendant knowingly and voluntarily waives those rights as set forth above." Id. at 4. Defendant also signed a petition to enter plea of guilty, which states that "I believe that my attorney has done all that anyone could do to counsel and assist me,

2

AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME." Dkt. # 568, at 9. At the change of plea hearing, the Court asked defense counsel and defendant if the plea agreement had been read to defendant in Spanish:

> THE COURT: All right. Now, Mr. Widdell, has someone translated the plea agreement, the supplement, and the petition into Spanish for Mr. Bonilla?
>
> MR. WIDDELL: No, Your Honor, we have not – we have not done that. I feel confident that the time that Mr. Bonilla and I spent together discussing it, that he fully understood it.
>
> THE COURT: When you spoke with him, did you speak to him with an interpreter?
>
> MR. WIDDELL: No, ma'am.
>
> THE COURT: All right. So, Mr. Bonilla, I assume that you have some understanding of English?
>
> THE DEFENDANT: (IN ENGLISH) Yes, Your Honor.
>
> THE COURT: Okay. And I understand why you need an interpreter, because this is a very serious matter and we have legal terms that we're using, but have you had an opportunity to read the English version of the plea agreement and supplement?
>
> THE DEFENDANT: (IN ENGLISH) Yes, Your Honor.
>
> THE COURT: And the Petition to Enter Plea of Guilty?
>
> THE DEFENDANT: (IN ENGLISH) Yes, Your Honor.
>
> THE COURT: Do you feel that you need [the interpreter] to translate those into Spanish for you?
>
> THE DEFENDANT: (IN ENGLISH) No, ma'am.
>
> THE COURT: Okay. Do you need any time to review those with Mr. Widell and [the interpreter] before we proceed?
>
> THE DEFENDANT: (IN ENGLISH) No, Your Honor.

Dkt. # 605, at 5-6. The Court asked defendant how far he had gone in school, and he stated that he attended school in the United States up to the eleventh grade. Id. at 8-9. Defendant also stated that he could read, write, and understand English about "80 percent." Id. at 9. The Court advised defendant that he faced a mandatory minimum sentence of 20 years as to count two, and that he could be sentenced to a maximum of life imprisonment on this count. The Court also informed defendant that he faced a maximum sentence of 20 years as to count three and 5 years as to the charge in the information. Id. at 14. Defendant stated that he understood the mandatory minimum for count two and the possible maximum sentences for each count. Id. The Court asked defendant if he understood that the plea agreement contained an appellate and post-conviction waiver, and also asked if defendant wished to have the interpreter translate the Court's questions concerning the terms of the waiver. Id. at 22. Defendant stated that he understood that the plea agreement contained an appellate and post-conviction waiver, and he did not need an interpreter. Id. at 22-23. However, the Court read each part of the appellate and post-conviction waiver to defendant and asked the interpreter to translate some of the Court's questions to defendant. Id. at 23-25. The Court asked defendant if he understood that he was waiving "the right to collaterally attack [his] conviction and sentence pursuant to 28 USC, Section 2255, which we sometimes call habeas corpus, except for claims based on ineffective assistance of counsel which challenge the validity of [his] guilty plea or the waiver of [his] appellate and post-conviction rights." Id. at 24. The Court asked defendant if he would like this question translated and he said "No. I already talked to [Widell] about it. I understand." Id. Defendant also acknowledged that Widell had explained defendant's appellate and post-conviction rights and that he was knowingly and voluntarily waiving the his appellate and post-conviction rights as stated in the plea agreement. Id. at 25. As required by Fed.

4

R. Crim. P. 11, the Court then explained to defendant each of the rights he was waiving by entering a guilty plea, and defendant stated that he understood the rights he was giving up by changing his plea. Id. at 25-28. During a sealed portion of the change of plea hearing, defendant described the offenses he had committed. Id. at 37-38. The Court found that defendant's plea of guilty was knowing and voluntary, and accepted his guilty plea. Id. at 41. The change of plea hearing lasted one hour and 17 minutes. See Dkt. # 563.

The United States Probation Office prepared a presentence investigation report (PSR), which provided that defendant had a total offense level of 40 and a criminal history category of IV. The advisory guideline range under the United States Sentencing Guidelines (Sentencing Guidelines) was 360 months to life imprisonment. Defense counsel filed a motion for non-guideline sentence and asked the Court to impose a sentence between 235 and 293 months. Dkt. # 585, at 3-6. Defense counsel also objected to the criminal history calculation and asked the Court to reduce defendant's criminal history category to III. Id. at 2-3. Before the sentencing hearing, defendant sent a letter to the Court asking for permission to withdraw his guilty plea and for the appointment of new counsel, and he claimed that defense counsel failed to investigate his claim that he was illegally abducted by Mexican authorities and brought to the United States in violation of an international treaty. Defense counsel filed a written response to the letter stating that he was aware of this issue and he contacted the Mexican consulate on November 10, 2009 to determine if it would take any action on defendant's behalf. Dkt. # 592, at 1. He also conducted approximately 4 hours of research to determine if defendant had any basis to seek dismissal of the indictment based on his allegations, but he found that the law was not favorable to defendant. Id. at 1-2. Defense counsel advised defendant of the applicable law and defendant "has not expressed interest in advice that does not

5

benefit his case." Id. at 4. The Court entered an opinion and order (Dkt. # 593) finding that defendant should not be permitted to withdraw his guilty plea or be appointed new counsel. The Court found that defendant delayed in asserting a claim based on the alleged illegal abduction and that it would be a waste of judicial resources to allow defendant to pursue a meritless claim. Dkt. # 593, at 4-5.

Defendant's sentencing hearing took place on July 1, 2010. The PSR had been read to defendant in Spanish before the sentencing hearing. Dkt. # 607, at 2. Based on defendant's objection (Dkt. # 585), his criminal history category was reduced to III. Id. at 7. Defense counsel asked the Court to impose a sentence between 235 and 293 months, and asked the Court to consider the 293 month sentence given to one of defendant's co-conspirator's, Jose Luis Saenz, when determining defendant's sentence. Id. at 10-11. The government opposed defendant's request for a downward variance and asked the Court to sentence defendant within the advisory guideline range. Id. at 11-13. The Court found that an advisory guideline sentence would create an unwarranted sentencing disparity between defendants with similar culpability, and granted defendant's motion for a downward variance. Id. at 15-16. The Court reduced the total offense level by two, and this resulted in a sentencing range of 292 to 365 months. Id. at 16. The Court sentenced defendant to 293 months imprisonment.

Defendant appealed his conviction and sentence, but the Tenth Circuit Court of Appeals dismissed his appeal. Dkt. # 635. Defendant's plea agreement contained an appellate waiver, and his claims fell within the scope of the appellate waiver. Id. at 2. The Tenth Circuit also found that defendant was attempting to assert ineffective assistance of counsel claims that should be raised in a § 2255 motion. Id. at 3-4. Defendant's conviction became final on December 8, 2010, when his

time to file a petition for writ of certiorari expired. Clay v. United States, 537 U.S. 522, 527 (2003). Defendant filed his motion to vacate, set aside, or correct sentence pursuant to § 2255 on September 12, 2011. Thus, defendant's motion was filed within the one year statute of limitations provided by § 2255, and his motion is timely.

## II.

Defendant generally argues that his attorney was ineffective for failing to fully advise him about the consequences of pleading guilty and for failing to raise certain arguments. Broadly construing defendant's § 2255 motion and reply, he may be asserting the following claims:

- defense counsel was ineffective by failing to raise all possible objections to the criminal history calculation in the PSR and a criminal history category of III over-represented the seriousness of defendant's prior convictions. Dkt. # 655, at 10-11.

- the Court erred by failing to sua sponte send defendant for a medical or psychiatric evaluation before sentencing him. Id. at 12-13.

- the Court failed to conduct an adequate colloquy under Fed. R. Crim. P. 11 before accepting defendant's guilty plea. Id. at 15-16.

- defense counsel provided ineffective assistance of counsel by not having the plea agreement read to defendant in Spanish before the change of plea hearing and defendant did not understand the rights he was giving up by entering the plea agreement. Id. at 17-18.

- the Court erred by taking defendant's guilty plea before preparation of the PSR. Id. at 19-21.

- defense counsel was ineffective for failing to investigate defendant's background and he did not adequately explain the applicable sentencing guidelines to defendant before the change of plea hearing. Id. at 22.

- defense counsel was ineffective for failing to raise arguments concerning the alleged abduction of defendant from Mexico and he failed to seek dismissal of the indictment based on alleged violations on international law. Id. at 13-14, 24-25.

- defense counsel was ineffective for failing to file a motion to dismiss the indictment based on the alleged inadequacy of the evidence presented to the grand jury. Dkt. # 662, at 5.[1]

The government asks the Court to enforce the post-conviction waiver in defendant's plea agreement, and argues that any claim not concerning the voluntariness of defendant's guilty plea or the validity of the waiver itself falls within the scope of the waiver. Dkt. # 659, at 20-22. Defendant may be arguing that the post-conviction waiver is invalid because defense counsel failed to have an interpreter present when he explained the terms of the plea agreement to defendant. Dkt. # 655, at 17. Defendant also argues that the entire plea agreement is invalid because defense counsel did not provide defendant a "complete understanding" of the terms of the plea agreement before the change of plea hearing. Dkt. # 662, at 2.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004). When determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States

---

[1] This claim was raised in defendant's reply. The reply was filed before defendant's one year statute of limitations expired and, if consideration of this claim is not barred by defendant's post-conviction waiver, it may be considered a timely amendment to his original § 2255 motion. See United States v. Guerrero, 488 F.3d 1313, 1316 (10th Cir. 2007).

v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors when a court is considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims fall within the scope of his waiver. Many of defendant's claims fall within the scope of his post-conviction waiver and will be barred if the post-conviction waiver is enforceable. In this case, defendant agreed to waive the right to

9

"collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." Dkt. # 566, at 3. Thus, defendant waived the right to pursue post-conviction claims challenging his alleged abduction, challenging the sentencing procedure or the length of his sentence, or alleging ineffective assistance of counsel on any issue other than the validity of the guilty plea or the enforceability of the post-conviction waiver. The only claims that do not fall within the scope of the waiver are his claims that defense counsel did not have the plea agreement read to defendant in Spanish before the change of plea hearing and that defense counsel gave him erroneous advice about the application of the Sentencing Guidelines before the change of plea hearing.

For the post-conviction waiver to be enforceable, the Court must find that defendant knowingly and voluntarily agreed to the waiver. Under Hahn, the Court must initially consider whether the plea agreement states that defendant knowingly and voluntarily agreed to the waiver. Hahn, 359 F. 3d at 1325. The plea agreement in this case plainly states that defendant "expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his [rights]; and that defendant knowingly and voluntarily waives those rights . . . ." Dkt. # 566, at 4. The Court must also consider whether defendant's guilty plea was the result of an adequate Rule 11 colloquy. Hahn, 359 F.3d at 1325. Defendant claims that he did not fully understand the rights he was giving up by entering the plea agreement, and he did not knowingly and voluntarily agree to the post-conviction waiver. Dkt. # 655, at 15. However, defendant's statements during the change of plea colloquy show that he understood that the plea agreement contained an appellate and post-conviction waiver, and the Court reviewed each provision of the

waiver with defendant on the record. Dkt. # 605, at 22-25. Defendant stated that his attorney advised him of his appellate and post-conviction rights, and he was knowingly and voluntarily waiving those rights. Id. at 25. Defendant now claims that he did not fully understand the plea agreement because it was not read to him in Spanish before the change of plea hearing. Dkt. # 655, at 18. However, the Court offered to have the plea agreement read to defendant in Spanish, and defendant advised the Court that he understood the plea agreement and he did not want to review the documents with an interpreter before continuing with his change of plea. Dkt. # 605, at 5-6. Defendant may not now claim that the post-conviction waiver is invalid because it was not read to him by an interpreter. The Court finds that defendant knowingly and voluntarily waived his right to file § 2255 motions except as permitted by the terms of the post-conviction waiver.

Under Hahn, the Court must also determine whether enforcement of the post-conviction waiver would result in a miscarriage of justice. Defendant may be arguing that the post-conviction waiver is invalid due to ineffective assistance of counsel during the negotiation of the plea agreement. Dkt. # 662, at 2. However, defendant's argument that defense counsel failed to adequately explain the terms of the plea agreement to defendant is contradicted by the transcript of the change of plea hearing. The Court reviewed with defendant the key terms of the plea agreement, including the appellate and post-conviction waiver, and defendant stated that he understood the terms of the plea agreement. Dkt. # 605, at 13. Defendant also signed a petition to enter plea of guilty stating that "I believe that my attorney has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME." Dkt. # 568, at 9. Defendant's conclusory assertion that his counsel did not adequately explain the plea agreement to him has no evidentiary support, and the Court finds that enforcement of the post-

conviction waiver will not result in a miscarriage of justice. Thus, the post-conviction waiver is enforceable.

Construing the post-conviction waiver in a light most favorable to defendant, it is possible that two of defendant's claims are not barred by his waiver of post-conviction rights. Defendant argues that his attorney provided ineffective assistance of counsel by failing to have the plea agreement read to him in Spanish before the change of plea hearing and that he did not understand all of the rights he was giving up by entering the plea agreement. Dkt. # 655, at 17-18. Defendant also argues that defense counsel failed to conduct an adequate investigation into defendant's background and failed to adequately explain the applicable sentencing guidelines before the change of plea hearing. Id. at 22.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the

extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defendant claims that his attorney was ineffective because he did not have the plea agreement read to him in Spanish before the change of plea hearing. Dkt. # 655, at 17-18. This claim is not barred by the post-conviction waiver to the extent that defendant argues that defense counsel's conduct rendered his guilty plea invalid. Defendant's statement is supported by the transcript of the change of plea hearing, wherein he stated that the plea agreement was not read to him in Spanish before the change of plea hearing. Dkt. # 605, at 6. However, defendant fails to mention that the Court was aware of this fact and offered to stop the change of plea hearing to allow defendant to review the plea agreement with an interpreter. Id. at 5-6. Defendant stated that he did not need the interpreter to translate the documents into Spanish and that he wanted to proceed with the hearing. Id. at 6-7. At various points during the change of plea hearing, the Court asked defendant if he would like to use an interpreter and he refused. Id. at 16-17, 19, 22, 30, 43. The Court also had several parts of the plea agreement read to defendant in Spanish, even when he did not specifically request a translation. Id. at 23, 28, 30. Given that defendant personally rejected the services of an interpreter at his change of plea hearing and stated that he fully understood the plea

agreement, the Court does not find that defense counsel performed deficiently by failing to have the plea agreement read to defendant in Spanish before the change of plea hearing.

Defendant also claims that his guilty plea was invalid because defense counsel failed to conduct an adequate investigation into defendant's background, and that this resulted in erroneous advice concerning defendant's criminal history category under the Sentencing Guidelines. Dkt. # 655, at 22. A plea can be rendered involuntarily entered when defense counsel induces a defendant to accept the plea through a material misrepresentation. United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990). However, the Tenth Circuit has held that a miscalculation of the guideline range or erroneous estimation of a defendant's sentence by defense counsel is not constitutionally deficient performance rising to the level of ineffective assistance of counsel. United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990). Defendant claims that he did not personally understand the extent to which his criminal history would impact his sentence, but he has not identified any specific incorrect advice that was given by his attorney. Dkt. # 655, at 22. Thus, he cannot show that his attorney's performance was deficient. Even if the Court were to assume that defense counsel's performance was constitutionally deficient, defendant could not show that he was prejudiced. The PSR originally stated that defendant's criminal history category was IV, but it was reduced to category III based on an objection filed by defense counsel. Dkt. # 585. The Court also granted defendant's request for a downward variance, and reduced his total offense level by two to avoid an unwarranted sentencing disparity among co-defendants. Dkt. # 607, at 15-16. Defense counsel successfully argued for a reduction in defendant's criminal history and a downward variance and, even if defendant had an incomplete

understanding of the Sentencing Guidelines, he has not shown that he was prejudiced by his own alleged incomplete understanding of the Sentencing Guidelines.

The Court has reviewed defendant's § 2255 motion and can find no other claims that could reasonably be construed as challenges to the validity of his guilty plea or the validity of the appellate and post-conviction waiver. Defendant requests an evidentiary hearing on his § 2255 motion, but he has not asserted a colorable claim for relief. Thus, the record conclusively shows that defendant is entitled to no relief and the Court is not required to hold an evidentiary hearing before denying defendant's § 2255 motion. United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. ## 655, 656) is **denied**. A separate judgment is entered herewith.

**DATED** this 25th day of January, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT